# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DONALD R. PEVIA, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. ELH-17-2319 |
| RONALD A. SAVILLE, | * | |
| Defendant | * | |
| * * * * | * * * | |
| DONALD R. PEVIA, | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. ELH-17-2322 |
| WARDEN FRANK BISHOP, SGT. ADAM A. SCHROYER, Defendants | * | |
| | *** | |

## MEMORANDUM OPINION

Plaintiff Donald R. Pevia, a self-represented inmate currently confined at the North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, filed these civil rights complaints pursuant to 42 U.S.C. § 1983. He alleges that while incarcerated at NBCI, he was injured due to deliberate indifference to his serious medical needs, because correctional staff disregarded a medical order and a settlement agreement reached between plaintiff and the State providing that he be handcuffed in front. *See Pevia v. Saville*, Civil Action ELH-17-2319 ("Pevia I"); *Pevia v. Bishop, et al.,* Civil Action ELH-17-2322 ("Pevia II").[1]

Defendant Saville has moved to dismiss or for summary judgment in Pevia I. ECF 17.

---

[1] Citations are to the court's electronic docket.

The motion is supported by a memorandum (ECF 17-1) (collectively, "Pevia I Motion") and exhibits.

Defendants Warden Frank Bishop and Sgt. Adam Schroyer have moved to dismiss or for summary judgment in Pevia II. ECF 14. Their motion is supported by a memorandum (ECF 14-1) (collectively, Pevia II Motion") and exhibits.

Plaintiff opposes both motions. *See* Pevia I, ECF 21; Pevia II, ECF 16. Defendants have replied and submitted additional exhibits. Pevia I, ECF 24; Pevia II, ECF 21. Plaintiff also filed identical motions to amend/supplement in each case. *See* Pevia I, ECF 28; Pevia II, ECF 25. The motions to amend shall be granted.

No hearing is necessary to resolve the Pevia I Motion or the Pevia II Motion. *See* Local Rule 105.6. The cases shall be consolidated for dispositive review and, for the reasons that follow, I shall grant defendants' dispositive motions, without prejudice, solely on the basis of plaintiff's failure to exhaust administrative remedies.

## I.  Background

### A.

In October 2013, Pevia instituted a civil rights complaint against a host of defendants concerning correctional staff's disregard for medical orders directing plaintiff to be handcuffed in the front. *See Pevia v. Shearin, et al.*, ELH-13-3083. In that case, I appointed pro bono counsel to represent Pevia. *See* ECF 39. A settlement conference was conducted by Magistrate Judge J. Mark Coulson on September 2, 2015. *See* Docket. Thereafter, the Court was advised that the case had been settled. Accordingly, I issued an Order of dismissal under Local Rule 111. *See* ECF 51.

On October 30, 2015, the settlement agreement was finalized between plaintiff and the

defendants in the 2013 case: former Commissioner Michael Stouffer, former Warden Bobby P. Shearin, Keith Arnold, Dale Smith, Lt. Paul Pennington, Christopher Wedlock, Nicholas Soltas, James Vinci, Christopher Wedlock, Brian Goldizen, Jenifer Robertson, Warden Frank Bishop, Richard E. Miller, and the Maryland Department of Public Safety & Correctional Services ("DPSCS"). Pevia II, ECF 16-1 at 5. The agreement specified that plaintiff was to be handcuffed in front. Pevia I, ECF 1 at 3; ECF 17-4 at 3; Pevia II, ECF 16-1 at 6; ECF 14-4 at 14. However, under the terms of the settlement, front cuffing could be temporarily denied in the event of an emergency, or if plaintiff abused the cuffing order. Pevia I, ECF 17-4 at 3; Pevia II, ECF 16-1 at 7; ECF 14-4 at 14.

In addition, the agreement also provided that plaintiff's front cuffing order could be reevaluated after September 1, 2016. If the attending physician determined that the front cuffing order was no longer necessary, plaintiff could elect to obtain a second opinion from the orthopedic specialist contracted to the on-site medical service. If the orthopedic specialist disagreed with the attending physician, the orthopedic specialist's opinion would control, so long as the DPSCS Medical Director approved. Pevia II, ECF 16-1 at 6-7; ECF 14-4 at 14-15.

In November 2015, plaintiff underwent left shoulder compression surgery. Pevia II, ECF 14-4 at 26-27.

## B. Pevia I

In Pevia I, plaintiff alleges that on August 29, 2016, Saville came to his cell to escort him to a sick call appointment. ECF 1 at 3. Plaintiff states that he placed his hands out of the cell door slot to be handcuffed in front, and advised Saville that he was to be handcuffed in front, but Saville stated that if plaintiff wanted to go to sick call he would have to be handcuffed behind his back. *Id.* Plaintiff complied with Saville's directive and claims that, as a result, he felt a ripping

3

sensation in his shoulder. *Id*. at 3-4.

Plaintiff alleges that shortly after the incident he was seen by Nurse Practitioner Krista Swann, who observed swelling at plaintiff's shoulder and expressed concern that the ligaments were torn again. *Id*. at 4. He was referred to physical therapy. Plaintiff claims that ultimately he was diagnosed with a strained bicep. *Id*. at 4.

Plaintiff filed ARP NBCI-1967-16 on August 29, 2016, alleging that Saville violated the front cuffing order on that date by refusing plaintiff's request to be cuffed in front. Pevia I, ECF 1-1 at 1-2; ECF 17-4 at 3-4. His ARP was denied on September 29, 2016, based on a finding that plaintiff failed to advise Saville that he had a medical order for front cuffing. *Id*.

Plaintiff filed an appeal to the Commissioner of Correction on October 1, 2016. *Id*. ECF 1-1 at 3-5; ECF 17-4 at 8. The appeal was dismissed on November 3, 2016. ECF 17-4 at 9. Thereafter, on November 28, 2016, plaintiff filed a grievance with the Inmate Grievance Office ("IGO"). ECF 1-1 at 6; ECF 17-4 at 21. An administrative hearing regarding plaintiff's grievance was held on June 7, 2017. ECF 17-4 at 22.

On August 14, 2017, while the grievance was pending, plaintiff filed Pevia I. ECF 1. Thereafter, the hearing officer denied relief to plaintiff in a written opinion issued on August 29, 2017. ECF 17-4 at 32.

### C. Pevia II

In Pevia II, plaintiff alleges that on October 11, 2016, Schroyer was assigned to escort plaintiff to his housing unit from physical therapy. ECF 1 at 3. Schroyer directed plaintiff to turn around to be handcuffed. *Id*. Plaintiff advised Schroyer that he was to be handcuffed in front, but Schroyer advised him that there was "no such thing as front cuff at NBCI." *Id*. Plaintiff states that when they returned to his cell, there was a sign over plaintiff's cell door,

4

which was placed there after the incident with Saville on August 29, 2016, indicating plaintiff was to be front handcuffed only. *Id*. at 4.

Plaintiff claims that, as a result of being handcuffed behind his back, he felt a sharp pain from his collar bone down to his forearm. *Id*. He asked Schroyer to notify the medical department that he needed assistance, but Schroyer failed to do so. *Id*. Plaintiff submitted a sick call slip and was provided a sling and ice for swelling, as well as follow up care. *Id*. at 5.

On October 11, 2016, plaintiff submitted ARP NBCI-2268-16, complaining that Schroyer insisted on cuffing him from behind during an escort from physical therapy, even though Pevia infomed Schroyer he was to be front cuffed only. ECF 14-4 at 3. The ARP was denied on November 16, 2016, after an investigation determined that plaintiff's front cuffing order expired on August 18, 2016, and he was subjected to a medical order which required "extended cuffing," which is what the ARP investigator noted plaintiff received. *Id*.

Documents provided to the court suggest that Pevia's front cuffing order had not in fact expired. *See* Pevia II, ECF 14-4 at 14 (Memorandum dated January 17, 2018, from John White, IGO Coordinator, to Assistant Warden Jeffrey Nines, indicating, among other things, that plaintiff was to be "front cuff only" until a reevaluation designated otherwise); ECF 14-4 at 16 (Letter dated February 1, 2018, from Dayena M. Corcoran, Commissioner of Correction to J. Michael Zeigler, Deputy Secretary, Operations, DPSCS, advising, among other things, that upon plaintiff's return to NBCI on January 22, 2018, shifts were advised that plaintiff was front cuff only and a sign was placed on his cell door stating he is "front cuff only.").

Pevia appealed the ARP to the Commissioner of Correction due to the lack of a response to his ARP from the Warden. ECF 14-4 at 11. He submitted a second appeal on November 26, 2016, after receiving the Warden's response. ECF 1-1 at 3-4. The appeal was denied on August

5

17, 2017. ECF 14-4 at 12.

On October 14, 2016, Pevia filed a grievance with the IGO concerning Schroyer's violation of the front cuffing order. ECF 14-4 at 24. A hearing was held on July 13, 2017. *Id*. at 25. Plaintiff filed Pevia II on August 11, 2017, while the grievance was still pending. ECF 1.

The ALJ issued a written opinion on October 6, 2017, finding plaintiff's grievance to be meritorious and directed NBCI to "implement a meaningful program or other action to effectively inform all Correctional Officers whose responsibilities include handcuffing inmates that the Grievant is to be front-cuffed only until notified differently." ECF 14-4 at 42. The Secretary of DPSCS affirmed the ALJ's ruling on January 8, 2018. *Id*. at 16.

## II. Standard of Review

Defendants' motions are styled as motions to dismiss under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A motion styled in this manner implicates the court's discretion under Rule 12(d) of the Federal Rules of Civil Procedure. *See Kensington Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007). However, under Rule 12(b)(6), a court, in its discretion, may consider matters outside of the pleadings, pursuant to Rule 12(d). If the court does so, "the motion must be treated as one for summary judgment under Rule 56," but "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Adams Housing, LLC v. The City of Salisbury, Maryland*, 672 Fed App'x. 220, 2016 WL 6958439, * 2 (4th Cir. 2016) (per curiam). However, when the movant expressly captions its

motion "in the alternative" as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur; the court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

A district judge has "complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5 C WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.). This discretion "should be exercised with great caution and attention to the parties' procedural rights." *Id*. at 149. In general, courts are guided by whether consideration of extraneous material "is likely to facilitate the disposition of the action," and "whether discovery prior to the utilization of the summary judgment procedure" is necessary. *Id*. at 165, 167.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012); *see Putney v. Likin*, 656 Fed. App'x 632, 638 (4th Cir. 2016); *McCray v. Maryland Dep't of Transportation*, 741 F.3d 480, 483 (4th Cir. 2015). A party "needs an 'adequate opportunity' to present its case and 'demonstrate a genuine issue of material fact.'" *Adams Housing, LLC v. City of Salisbury, Md.*, 672 F. App'x 220, 222 (4th Ci. 2016) (citation omitted). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F.Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x 274 (4th Cir. 2008), *cert. denied*, 555 U.S. 885 (2008).

If a non-moving party believes that further discovery is necessary before consideration of summary judgment, the party fails to file a Rule 56(d) affidavit at his peril, because "'the failure to file an affidavit . . . is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Harrods*, 302 F.3d at 244 (citations omitted); *see Dave & Buster's, Inc. v. White Flint Mall, LLLP*, 616 F. App'x, 552, 561 (4th Cir. 2015). But, the non-moving party's failure to file a Rule 56(d) affidavit cannot obligate a court to issue a summary judgment ruling that is obviously premature. Although the Fourth Circuit has placed "'great weight'" on the Rule 56(d) affidavit, and has said that a mere "'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for [an] affidavit,'" the appellate court has "not always insisted" on a Rule 56(d) affidavit. *Id*. (internal citations omitted).

According to the Fourth Circuit, failure to file an affidavit may be excused "if the nonmoving party has adequately informed the district court that the motion is premature and that

more discovery is necessary" and the "nonmoving party's objections before the district court 'served as the functional equivalent of an affidavit.'" *Harrods*, 302 F.3d at 244-45 (internal citations omitted); *see also Putney*, 656 Fed. App'x at 638; *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). "This is especially true where, as here, the non-moving party is proceeding pro se." *Putney*, 656 Fed. App'x at 638.

I am satisfied that it is appropriate to address defendants' motions as ones for summary judgment, because it will facilitate resolution of this case.

Summary judgment is governed by Fed. R. Civ. P. 56(a), which provides, in part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.* at 248. There is a genuine issue as to material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Sharif v. United Airlines, Inc.,* 841 F.3d 199, 2014 (4th Cir. 2016); *Raynor v. Pugh*, 817 F.3d 123, 130 (4th Cir. 2016); *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club,*

*Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)), *cert. denied*, 541 U.S. 1042 (2004). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 645 (4th Cir. 2002); *see Roland v. United States Citizenship & Immigration Servs.*, 850 F.3d 625, 628 (4th Cir. 2017); *FDIC v. Cashion*, 720 F.3d 169, 173 (4th Cir. 2013).

The district court's "function" is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Moreover, the trial court may not make credibility determinations on summary judgment. *Jacobs v. N.C. Administrative Office of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *Mercantile Peninsula Bank v. French*, 499 F.3d 345, 352 (4th Cir. 2007); *Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis*, 290 F.3d at 644-45. Therefore, in the face of conflicting evidence, such as competing affidavits, summary judgment is generally not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility.

Nevertheless, to defeat summary judgment, conflicting evidence, if any, must give rise to a *genuine* dispute of material fact. *See Anderson*, 477 U.S. at 247-48. If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," then a dispute of material fact precludes summary judgment. *Id.* at 248; *see Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013). On the other hand, summary judgment is appropriate if the evidence "is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 252. And, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be

insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In sum, to counter a motion for summary judgment, there must be a genuine dispute as to material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law." *Iraq Middle Mkt. Dev. Found. v. Harmoosh*, 848 F.3d 235, 238 (4th Cir. 2017).

### III. Discussion

Defendants raise the affirmative defense that plaintiff has failed to exhaust his administrative remedies. If plaintiff's claims have not been properly presented through the administrative remedy procedure they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e. The PLRA provides, in pertinent part, 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).[2]

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

---

[2] Maryland appellate case law indicates that the administrative grievance procedure does not encompass "'every kind of civil matter that could be brought by a DOC inmate.'" *Massey v. Galley*, 392 Md. 634, 646, 898 A.2d 951, 958 (2006) (citation omitted). Rather, it applies only to matters that "relate to or involve a prisoner's 'conditions of confinement.'" *Id.* at 651, 898 A.2d at 960 (citation omitted). Thus, the grievance procedure does not apply to requests for public information under the Maryland Public Information Act, *see id.*, nor does it apply to medical malpractice claims against private medical service providers who treat inmates under contract with the DOC. *See Abramson v. Correctional Med. Servs., Inc.*, 359 Md. 238, 753 A.2d 501 (2000).

Moreover, the administrative grievance procedure does not apply to claims for compensation for disabilities resulting from "personal injury arising out of and in the course of [an inmate's] work for which wages or a stipulated sum of money was paid by a correctional facility," Md. Code Ann. Corr. Servs. § 10-304, for which a claim to a different administrative body, the Sundry Claims Board, is the exclusive remedy. *See Dixon v. DPSCS*, 175 Md. App. 384, 927 A.2d 445 (2007). On the other hand, the grievance process does apply to a wide variety of claims that arise out of the conditions of confinement, even if the grievance process cannot provide a comprehensive remedy for such claims, such as tort claims of assault and battery against prison officers. *See McCullough v. Wittner*, 314 Md. 602, 552 A.2d 881 (1989).

The doctrine governing exhaustion of administrative remedies has been well established through administrative law jurisprudence and provides that a plaintiff is not entitled to judicial relief until the prescribed administrative remedies have been exhausted. *Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (citations omitted). A claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, where applicable, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S.Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Ross*, 136 S.Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

The PLRA's exhaustion requirement serves several purposes. These include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (exhaustion means providing prison officials with the opportunity to respond to a complaint through proper use of administrative remedies). It is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process so that the agency reaches a decision on the merits. *Chase v. Peay*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v.*

*Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement so that the agency addresses the merits of the claim, but need not seek judicial review), *cert. denied*, 537 U.S. 949 (2002).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, *supra*, 517 F.3d at 725, 729; *see Langford v. Couch*, 50 F.Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (emphasis in original). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

Notably, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). The Fourth Circuit addressed the meaning of "available" remedies in *Moore v. Bennette,* 517 F. 3d at 725, stating:

> [A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it. *See Aquilar-Avellaveda v. Terrell*, 478 F. 3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F. 3d 678, 684 (7th Cir. 2006). Conversely, a prisoner does not exhaust all available remedies simply by failing to follow the required steps so that remedies that once were available to him no longer are. *See Woodford v. Ngo*,

548 U.S. 81, 89 (2006). Rather, to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies "in accordance with the applicable procedural rules," so that prison officials have been given an opportunity to address the claims administratively. *Id*. at 87. Having done that, a prisoner has exhausted his available remedies, even if prison employees do not respond. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

More recently, in *Ross v. Blake*, ___ U.S. ___, 136 S.Ct. 1850 (2016), the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." *Id*. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. Of import here, the Supreme Court stated in *Ross* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738). But, the Court reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. And, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The *Ross* Court outlined three kinds of circumstances when an administrative remedy is unavailable and an inmate's duty to exhaust available remedies "does not come into play." 136 S. Ct. at 1859. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* at 1859. Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id*. The third circumstance arises when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

This is not a case of unavailable administrative remedies. Indeed, Pevia partially availed himself of the administrative process, as recounted earlier.

The DPSCS has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code (2008 Repl. Vol.), Correctional Services Article ("C.S."), §§ 10-201 *et seq.*; Code of Maryland Regulations ("COMAR") 12.07.01.01B(1) (defining ARP); OPS.185.0002.02.[3] The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance' to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). Ordinarily, an inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO.

---

[3] OPS.185.0002 is an Executive Directive created by the Maryland Department of Public Safety and Correctional Services, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive") available for review at http://itcd.dpscs.state.md.us/PIA. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

*See* C.S. § 10-206(b); *see also* OPS.185.0002.02. A grievance must be filed in writing, in a format approved by the IGO, or by use of an ARP form. COMAR 12.07.01.04(A). And, the grievance must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. COMAR 12.07.01.05A.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official." OPS.185.0002.05C(1). In C.S. § 1-101(k), a "managing official" is defined "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DPSCS, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. In that circumstance, the prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id*.

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B.

17

An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code, State Gov't Article §§ 10-101 et seq.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in a Maryland circuit court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g., Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

It is undisputed that plaintiff pursued his administrative remedies through most stages of the administrative process. But, he did not finalize the administrative process prior to instituting either Pevia I or Pevia II. Pevia instituted suit in federal court in two cases after a hearing before an ALJ but before the ALJ issued a ruling. *See* Pevia I, ECF 17-4 at 32; Pevia II, ECF 14-4 at 42. In both Pevia I and Pevia II, it is undisputed that the grievance process was ongoing when Pevia filed suit. In the case of Pevia II, plaintiff's claim was found meritorious, which then

18

triggered an additional step, the review of the ALJ decision by the Secretary of DPSCS. Plaintiff erroneously maintains that once the hearing was conducted, his remedies were exhausted. Pevia I, ECF 21 at 11; Pevia II, ECF 16 at 13.

Proper exhaustion means not only utilizing all steps made available to the plaintiff by the agency, but permitting the agency to address the merits of the claims, *before* a suit is filed. *Woodford* 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Plaintiff did not allow the completion of the administrative process prior to filing these cases. Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds).

In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012) *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D.W. Va. Mar. 12, 2012); *Miller v. McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015).

The court is mindful that dismissal of the complaints in this instance appears to elevate form over substance, given that plaintiff has now completed administrative review. But, there appears to be no impediment to the refiling of the same claims. And, the court can find no

authority which would permit the cases to proceed, given their premature filing. The ends cannot justify the means. There is a process, and it must be followed. As such, the cases shall be dismissed, *without prejudice*, for failure to exhaust administrative remedies.

A separate Order follows, which shall be filed in both cases.

June 22, 2018                                                      /s/
Date                                                            Ellen L. Hollander
                                                               United States District Judge